IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN HALL<br>1220 Victoria Lane,<br>West Chester, PA 19380<br><br>　　　　Plaintiff<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA<br>1601 Chestnut Street<br>Philadelphia, PA 19192<br><br>and<br><br>ICON CLINICAL RESEARCH, LLC<br>731 Arbor Way<br>Suite 100<br>Blue Bell, PA 19422<br><br>　　　　Defendants. | No. |

**COMPLAINT**

　　　　Plaintiff Karen Hall, through her undersigned counsel, for her Complaint against Life Insurance Company of North America and ICON Clinical Research, LLC states as follows.

**INTRODUCTION**

　　　　1.　　　　This is an action brought pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). ERISA is a remedial statute that Congress enacted to protect "the interests of participants in employee benefit plans and their beneficiaries" by requiring the establishment of uniform standards of disclosure, conduct, and fiduciary responsibility. 29 U.S.C. § 1001(b). It imposes higher than marketplace standards on insurers and employee benefit plan fiduciaries – like Defendants – who must act in the sole interest

1

of benefit plan participants and their beneficiaries for the exclusive purpose of providing benefits under the terms of an employee benefit plan.

2. Defendants wrongfully denied Ms. Hall the employee benefits she was entitled to under the terms of the ICON Clinical Research, LLC Health and Welfare Benefits Plan ("the Plan"), and denied her a full and fair review of her claim for Plan benefits when she appealed the adverse claim determination at issue in this case.

## THE PARTIES

3. Ms. Hall is a resident of West Chester, Chester County, Pennsylvania and a former employee of ICON Clinical Research, LLC ("ICON"), and a participant in the Plan.

4. ICON sponsors The Plan and maintains its principal place of business in Blue Bell, Pennsylvania.

5. ICON serves as the Plan's Administrator as that term is defined in Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

6. The Plan is an employee welfare benefit plan that provides short-term and long-term disability benefits to eligible Plan participants subject to the terms of the Plan.

7. ICON self-funds the short-term disability ("STD") benefits program available under the Plan.

8. Life Insurance Company of North America ("LINA") is an insurance company organized under the laws of Pennsylvania with its principal place of business located in Pennsylvania. LINA administers claims under the STD Plan.

9. LINA issued a group policy of insurance bearing policy number LK-966360 to fund the Plan's long-term disability benefits ("LTD") program and also insures and administers the Plan's LTD benefits program.

10. ICON and LINA are each a fiduciary as that term is defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21), as they, *inter alia*, exercise authority or control respecting management or disposition of Plan assets.

## THE TERMS OF THE PLAN

11. The Plan provides STD benefits to eligible Plan participants who meet the Plan's definition of disability as set forth in the Short Term Disability Income Plan Summary Plan Description ("SPD").

12. The SPD defines Disability for the purpose of receiving STD benefits as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
> 1. unable to perform all the material duties of your Regular Job, and
> 2. unable to earn 80% or more of your Covered Earnings from working in your Regular Job.

13. "Material duties" as used in the summary plan description is not defined.

14. "Regular Job" is defined as "the job as it is normally performed for the Employer."

15. The Plan provides STD benefits in an amount equal to sixty percent (60%) of the Plan participant's "covered earnings."

16. A Plan participant's "Covered Earnings" are her wage or salary in effect "just prior" to the date Disability begins.

17. The "maximum benefit period" for STD benefits is twenty-six (26) weeks.

18. The Plan provides LTD benefits to eligible Plan participants who meet the Plan's definition of Disability as set forth in the Group Long Term Disability Insurance Certificate ("LTD Plan.")

19. The LTD Plan defines Disability for the purpose of receiving LTD benefits as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
> 1. unable to perform the material duties of your Regular Occupation; and
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of your Indexed Earnings.

20. "Regular Occupation" means "[t]he occupation you routinely perform at the time the Disability begins. In evaluating the Disability, we will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location."

21. For the first twelve (12) months that benefits are payable, "Indexed Earnings are equal to your Covered Earnings." After twelve (12) monthly benefits are payable, "Indexed Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable." The amount increases by ten percent (10%) of Indexed Earnings during the preceding year of Disability, or the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year, whichever is lower.

22. The LTD Plan provides participants with benefits in an amount equal to sixty percent (60%) of her Covered Earnings, or $15,000, whichever is lower.

23. Under the Plan, Ms. Hall became eligible for LTD benefits upon remaining disabled and completing a twenty-six (26) week elimination period from the date she became entitled to STD benefits.

24. Under the Plan, Ms. Hall is entitled to receive LTD Benefits until her sixty-fifth (65th) birthday.

## JURISDICTION AND VENUE

25. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA – a law of the United States – and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

26. The Court has personal jurisdiction over Defendants because the Plan is administered in this District and Division, Defendants regularly transact business in this District and Division, and Defendants have consented to the Court's personal jurisdiction. This Court also has personal jurisdiction over Defendants because Defendants maintain their principal places of business in this Division and District.

27. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because at all relevant times: (a) the Plan was and is administered in this District; (b) the breaches and violations giving rise to the claims occurred in this District; and (c) Defendants may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

28. ICON employed Ms. Hall as a "set up specialist." As a full-time ICON employee, Ms. Hall participated in the Plan.

29. Ms. Hall stopped working in May 2024 due to depression and insomnia.

30. Ms. Hall filed a claim for STD benefits on May 24, 2024.

31. LINA approved Ms. Hall for STD benefits on June 24, 2024. LINA determined that benefits were payable to Ms. Hall from May 31, 2024 through July 13, 2024.

5

32. On July 17, 2024, as part of its ongoing review of Ms. Hall's Disability, LINA requested medical records from July 13, 2024 through the present from Ms. Hall's primary care physician, Dr. Ian Holgado.

33. On August 1, 2024, having received no records from Dr. Holgado, LINA terminated Ms. Hall's benefits as of July 13, 2024.

34. On September 5, 2024, LINA received updated medical records from Dr. Holgado documenting the time-period from July 8, 2024 through August 6, 2024. Dr. Holgado recommended that Ms. Hall remain out of work through October 14, 2024.

35. On September 13, 2024, LINA contacted Dr. Holgado and asked how her symptoms affect her ability to work. LINA did not receive a response.

36. On September 23, 2024, despite receiving Ms. Hall's updated medical records, LINA again found that Ms. Hall was not eligible for benefits as of July 13, 2024. LINA stated that Ms. Hall's medical records demonstrated that she was not functionally impaired.

37. In support of its decision to terminate Ms. Hall's benefits from July 13, 2024, LINA referred to boilerplate in Dr. Holgado's August 6, 2024 office visit describing the results of the visit's "physical exam." This section of the note states that Ms. Hall's attention, thought content, cognition and judgment were all normal, though her affect was flat and tearful, and her speech rapid and pressured. LINA also noted that Ms. Hall had not seen a therapist, despite Dr. Holgado's recommendation.

38. LINA received Ms. Hall's timely appeal of the denial on September 26, 2024.

39. Ms. Hall included with her appeal Dr. Holgado's response to LINA's September 13, 2024 inquiry, which he authored the same day. It is not clear why LINA had not received this note.

40. After Ms. Hall submitted her appeal, LINA requested that Dr. Holgado complete a "behavioral health questionnaire," which he did on October 1, 2024, during Ms. Hall's scheduled visit. He noted that Ms. Hall remained disabled, and he recommended that she remain out of work through at least November 11, 2024.

41. On October 18, 2024, LINA denied Ms. Hall's appeal.

42. On November 4, 2024, LINA denied Ms. Hall's second appeal by a letter nearly identical to the one dated October 18, 2024, again stating that her medical records demonstrate that she did not suffer physical or behavioral impairment.

## **COUNT I – DENIAL OF STD BENEFITS**
## **PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)**

43. Ms. Hall repeats, reaffirms, and realleges paragraphs one (1) through forty-two (42) of the Complaint as if fully restated at length herein.

44. Ms. Hall has exhausted her internal remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

45. Ms. Hall is entitled to STD benefits under the terms of the Plan because she was disabled as defined by the Plan.

46. The denial of Ms. Hall's claim for benefits was contrary to the terms of the Plan, de novo wrong, and an abuse of discretion.

47. LINA failed to provide Ms. Hall with a full and fair review of her claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as C.F.R. § 2560.503-1, by *inter alia*, failing to provide Ms. Hall with all documents relevant to her claim for benefits, cherry picking the evidence reviewed in connection with her claim, relying on the flawed and self-serving reports of its consultants, and ignoring the opinions of Ms. Hall's treating healthcare providers.

48.     Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

49.     As a result of LINA's denial of Ms. Hall's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Ms. Hall to a declaration of rights clarifying the benefits to which she is entitled under the Plan.

WHEREFORE, Ms. Hall prays the Court grant her the following relief with respect to Count I of her Complaint:

   a. That the Court enter judgment in favor of Ms. Hall and against Defendants, and award her all past due disability benefits and future benefits pursuant to the terms of the Plan;

   b. Order Defendants to pay Ms. Hall prejudgment interest on all benefits that have accrued prior to the date of judgment;

   c. That the Court award Ms. Hall her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

   d. That Ms. Hall recovers any and all other relief to which she may be entitled.

## COUNT II – DENIAL OF LTD BENEFITS
## PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

50.     Ms. Hall repeats, reaffirms, and realleges paragraphs one (1) through forty-nine (49) of the Complaint as if they were restated at length herein.

51.     Ms. Hall remained disabled under the terms of the Plan after the exhaustion of her entitlement to STD benefits.

52. Having terminated her STD benefits, LINA failed to open a claim for LTD benefits.

53. Ms. Hall submitted sufficient proof of loss to LINA in connection with her STD claim to demonstrate her entitlement to LTD benefits under the Plan.

54. Ms. Hall's claim for LTD benefits has been deemed denied and any further attempt to appeal or pursue her claim would be futile. As such, Ms. Hall is not required to exhaust her internal appeals and may proceed with her claim for benefits in this Court.

55. Ms. Hall is disabled under the terms of the Plan and entitled to LTD benefits.

WHEREFORE, Ms. Hall prays the Court grant her the following relief with respect to Count II of her Complaint:

    a. That the Court enter judgment in favor of Ms. Hall and against Defendants, and award her all past due disability LTD benefits pursuant to the terms of the Plan;

    b. Order Defendants to pay Ms. Hall prejudgment interest on all benefits that have accrued prior to the date of judgment;

    c. That the Court award Ms. Hall her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

    d. That Ms. Hall recovers any and all other relief to which she may be entitled.

### COUNT III – INJUNCTIVE RELIEF PURSUANT TO 29 U.S.C. §§ 1132(a)(3)

56. Ms. Hall repeats, reaffirms, and realleges paragraphs one (1) through fifty-five (55) of the Complaint as if they were fully restated at length herein.

57. Pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), a participant may bring suit against a Plan fiduciary for injunctive relief against any action that violates the terms of an ERISA-regulated employee benefit plan.

58. LINA is, as noted above, a Plan fiduciary.

59. LINA has refused to open, much less consider, Plaintiff's claim for LTD benefits under the terms of the Plan, which is contrary to the plain language of the Plan.

60. In the event that the Court determines that Ms. Hall is required to exhaust her internal appeals prior to seeking relief pursuant to 29 U.S.C. § 1132(a)(1)(B) in connection with her claim for LTD benefits, the Court should enjoin LINA from refusing to open and consider Ms. Hall's claim for LTD benefits under the Plan and order it to open, process and adjudicate her claim for LTD benefits.

WHEREFORE, Ms. Hall prays the Court grant her the following relief with respect to Count III of her Complaint:

    a. That the Court enter an injunction against LINA ordering it to open, process, and ultimately adjudicate Ms. Hall's claim for LTD benefits pursuant to Section 503 of ERISA, 29 U.S.C. § 1133, and its implementing regulations at 29 C.F.R. § 2560.503-1;

    b. That the Court award Ms. Hall her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

    c. That Ms. Hall recovers any and all other relief to which she may be entitled.

Respectfully submitted,

/s/ Jacob Day
Adam Harrison Garner (320476)
Jacob Day (334860)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com

Attorneys for Plaintiff

Dated: January 21, 2026